IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LAPOSTA OLDSMOBILE, INC.,
a West Virginia corporation,

      Plaintiff,

v.                           Civil Action No. 5:05CV79
                                         (STAMP)

GENERAL MOTORS CORPORATION,
a Delaware corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### DEFENDANT GENERAL MOTORS CORPORATION'S MOTION TO DISMISS

## I.  Procedural History

In June 2005, plaintiff, LaPosta Oldsmobile, Inc. ("LaPosta"), filed a action against General Motors Corporation ("GM") pursuant to 20 U.S.C. § 1332, alleging unlawful termination of the dealer franchise agreement between these parties in violation of West Virginia Code § 17A-6A-4. LaPosta further seeks damages for breach of contract, breach of implied covenant of good faith and fair dealing and unjust enrichment.

GM filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), to which LaPosta responded and GM replied.

This Court has reviewed the applicable law as well as the memoranda in support of and in opposition to the motion to dismiss. For the reasons state below, this Court finds that GM's motion to dismiss should be granted in part and denied in part.

## II.  Facts

LaPosta has been an Oldsmobile dealer since March 1973.  GM is the manufacturer of Oldsmobile motor vehicles.

By letter dated December 12, 2000, GM announced that it was phasing-out the Oldsmobile Division and its Oldsmobile product over the next several years. (Compl. Ex. A.)  GM announced that that product had been unprofitable for some time.  GM stated that it had invested a considerable amount of resources in engineering the current Oldsmobile lines but had continued to lose market share and that the Oldsmobile Division had become unprofitable.

LaPosta entered into the Dealer Sales and Service Agreement ("Dealer Agreement") with GM on November 1, 2000.  That Agreement expired October 31, 2005.  (Compl. Ex. B.)  In December 2000, GM announced the "Transition Financial Assistance Program" ("TFAP") for Oldsmobile dealers.  Under the TFAP, GM offered a compensation formula which extends a value to the franchise and if taken, terminates the franchise agreement between GM and the affected Oldsmobile franchisee.  This is a voluntary program in which the parties may participate if they own an Oldsmobile franchise. LaPosta did not participate in the TFAP program.

As noted, LaPosta seeks damages for unlawful termination of the franchise agreement, breach of contract, breach of implied covenant of good faith and fair dealing and unjust enrichment.

### III. <u>Applicable Law</u>

GM asks this Court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to dismiss for failure to state a claim under this rule, a court must accept the factual allegations contained in the complaint as true. <u>Advanced Health Care Servs., Inc. v. Radford Community Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" <u>Id.</u> at 143-44 (quoting <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969)); <u>see also</u> <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to

the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

Finally, "[a] district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion." Carter v. Norfolk Community Hosp. Ass'n, 761 F.2d 970, 974 (4th Cir. 1985).

## IV. Discussion

GM argues that this Court should dismiss the complaint because LaPosta has failed to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, GM argues that LaPosta fails to state a claim for: (1) unlawful termination of its Oldsmobile Dealer Sales and Service Agreement or any other claim under the other statutory provisions cited by LaPosta; (2) breach of implied covenant of good faith and fair dealing because its theories either attempt to use an implied covenant to impose new obligations or confuse the express contract obligations with implied obligations; (3)unjust enrichment because no such claim can proceed where an express contract, the Dealer Agreement, covers the subject matter.

In response, LaPosta argues that: (1) GM does not have good cause to refuse to renew the franchise agreement pursuant to West

Virginia Code § 17A-6A-1, <u>et seq</u>; (2) its action for violation of the dealer protection statute is timely; (3) Count II of the complaint is based upon the violation of four primary contract covenants by GM; (4) the implied covenant of good faith and fair dealing will not override the express terms of the contract between the parties, <u>see</u> <u>Barn-Chestnut, Inc. v. CFM Dev. Corp.</u>, 457 S.E.2d 502 (W. Va. 1995); and (5) West Virginia law holds that "restitution damages from a claim of unjust enrichment are measured in terms of the benefit plaintiff conferred to the defendant" and, therefore, recovery for unjust enrichment is allowed by law. (Pl.'s Resp. at 18.)

A.  <u>Unlawful Termination (Count I)</u>

LaPosta alleges that GM unlawfully terminated, canceled or failed to renew LaPosta's franchise "without good cause and in bad faith . . ." in violation of West Virginia Code § 17A-6A-4. (Compl. ¶ 31.)

GM argues that LaPosta fails to state a claim under any of the various statutory provisions it cites, West Virginia Code § 17A-6A-10(1)(d),(h), and (2)(A).

1.  <u>Section 17A-6A-7(e)</u>

GM argues that West Virginia Code § 17A-6A-7(e) states that "any motor vehicle dealer who receives a notice of intent to discontinue, cancel or not renew a dealer agreement may, within a one hundred twenty-day notice period, file a petition or complaint

5

for a determination of whether such action is an unfair or prohibited discontinuation, cancellation or renewal." W. Va. Code § 17A-6A-7(e).

LaPosta argues that § 17A-6A-7(e) did not become effective until July 8, 2005. This action was filed on June 2, 2005. This Court finds that provision (e) of § 17A-6A-7 became applicable after this action was filed. Accordingly, provision (e) of § 17A-6A-7 does not govern in this civil action.

2. Section 17A-6A-4

In Count I, LaPosta alleges that GM terminated LaPosta's Oldsmobile franchise in violation of West Virginia Code § 17A-6A-4. Section 17A-6A-4 provides:

> (1) Notwithstanding any agreement, a manufacturer or distributer shall not cancel, terminate, fail to renew or refuse to continue any dealer agreement with a new motor vehicle dealer unless the manufacturer or distributer has complied with all the following:
>
> (a) Satisfied the notice requirement of section seven [§ 17A-6A-7] of this article;
>
> (b) Acted in good faith;
>
> (c) Engaged in full and open communication with franchised dealer; and
>
> (d) Has good cause for the cancellation, termination, nonrenewal or discontinuance under subdivision (d), subsection (1) of this section.

GM argues that it has met the requirements set forth in § 17A-6A-4. GM argues that the statute expressly provides for discontinuance of a product line as a proper cause for

6

discontinuation of a dealer agreement as long as twelve months notice is given.

In response, LaPosta argues that GM has not shown good cause for the termination, failure to renew or discontinuance as required under § 17A-6A-7(1)(d). In addition, LaPosta argues that when a manufacturer seeks to discontinue a dealer's product line, it must give the dealer at least twelve months of advance notice of the discontinuation.

In reply, GM argues that the Fourth Circuit has rejected LaPosta's narrow interpretation of good cause in dealer statutes similar to the West Virginia statute in Central GMC, Inc. v. General Motors Corp., 946 F.2d 327 (4th Cir. 1991), and Glaesner v. Beck/Arnley Corp., 790 F.2d 384, 388 (4th Cir. 1986). GM further states that the Fourth Circuit agrees with the First and Ninth Circuits that "good cause" exists when a franchisor conducts a complete, non-discriminatory market withdrawal as cited in Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817 (1st Cir. 1988), and American Mart Corp. v. Joseph E. Seagram & Sons, Inc., 824 F.2d 733 (9th Cir. 1987)(per curiam).

This Court finds the above cited cases unpersuasive as to GM's motion to dismiss. Both Central GMC, Inc., 946 F.2d at 327, and American Mart Corp., 824 F.2d at 733, were cases for summary judgment. Medina, 858 F.2d at 817, involved a certified question to the state court. In Medina, the defendant filed a motion for

7

summary judgment in the United States District Court for the District of Puerto Rico. Id. The court adopted a narrow construction of the term "just cause" and denied the motion for summary judgment. Id. at 819. After the trial, Country Pride appealed. The First Circuit Court of Appeals certified a question to the Puerto Rico Supreme Court. See id. Finally, in Glaesner, 790 F.2d 384, the supplier filed an appeal following a jury award in favor of the distributor.

As noted, a motion to dismiss pursuant to Rule 12(b)(6) must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 298 (2d ed. 1990). For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357 at 304, 310.

The cases cited by GM are cases dealing with the merits of the claim and not, as in this civil action, whether the allegations constitute a statement of a claim.

LaPosta further argues that GM has not shown good cause under West Virginia Code § 17A-6A-4.

West Virginia Code § 17A-6A-4(2)(a)(b) provides that:

[G]ood cause exists for the purposes of a termination, cancellation, nonrenewal or discontinuance under subdivision (d) subsection (1) of this section when both of the following occur:

(a)  There is a failure by the new motor vehicle dealer to comply with a provision of the dealer agreement and the provision is both reasonable and of material significance to the relationship between the manufacturer or distributor and the new motor vehicle dealer; and

(b)  The manufacturer or distributor first acquired actual or constructive knowledge of the failure not more than eighteen months prior to the date on which notification was given pursuant to section seven [§ 17A-6A-7] of this article.

W. Va. Code § 17A-6A-4(2)(a)(b).

The issue of whether GM terminated its dealer agreement for "good cause" is a factual determination. Viewed in the light most favorable to LaPosta, the allegations in the complaint constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Accordingly, GM's motion to dismiss that part of Count I is denied.

3.  Section 17A-6A-10

GM argues that the provisions in § 17A-6A-10 have nothing to do with this civil action. LaPosta asserts that The Dealer Protection Act, West Virginia Code § 17A-6A-1, et seq, was enacted to protect dealers from an imbalance in bargaining power and exercise of undue control by the manufacturer. This Court finds that the allegations under West Virginia Code § 17A-6A-10 contained in Count I of the complaint constitute a statement of a claim.

9

Accordingly, GM's motion to dismiss the allegations under § 17A-6A-10 asserted in Count I is denied.

      a.   <u>Section 17A-6A-10(1)(d) and Section 17A-6A-10(1)(h)</u>

Section 17A-6A-10(1)(d) provides that it is unlawful for a manufacturer to require a dealer to:

> Enter into any agreement with the manufacturer . . . or do any other act prejudicial to the new motor vehicle dealer by threatening to terminate a dealer agreement or any contractual agreement or understanding between the dealer and the manufacturer or distributor.

Section 17A-6A-10(1)(h) provides that it is unlawful to require a dealer to "prospectively assent to a release, assignment, waiver or estoppel which would relieve any person from liability imposed by this article . . . ."

GM argues that its actions are allowed under article 6A. GM also asserts that it has not required or attempted to require LaPosta to take any action at all. <u>See</u> W. Va. Code § 17A-6A-10(1). LaPosta argues that the Dealer Protection Act provides that GM must make a showing of good cause in order for the termination of non-renewal to be lawful.

LaPosta alleges that "GM has used the threat of the impeding termination of LaPosta's Oldsmobile franchise agreement in its attempts to have LaPosta sign GM's TFAP agreement." (Pl.'s Resp. at 9.) This Court finds that the allegations under West Virginia Code § 17A-6A-10(1)(d) and (h) contained in Count I of the complaint

constitute a statement of a claim.  Accordingly, GM's motion to dismiss that part of Count I is denied.

4.  Section 17A-6A-10(2)(a)

West Virginia Code § 17A-6A-10(2)(a) states, in pertinent part, that it is unlawful for a manufacturer to:

> Fail to deliver new motor vehicles or new motor vehicle parts or accessories within a reasonable time and in reasonable quantities relative to the new motor vehicle dealer's market area and facilities, unless the failure is caused by acts or occurrences beyond the control of the manufacturer or distributor, or unless the failure results from an order by the new motor vehicle dealer in excess of quantities reasonably and fairly allocated by the manufacturer or distributor.  No manufacturer or distributor may penalize a new motor vehicle dealer for an alleged failure to meet sales quotas where the alleged failure is due to the actions of the manufacturer or distributor.

W. Va. Code § 17A-6A-10(2)(a).

GM argues that it may legally discontinue a line-make by re-casting its claim as one for unfair vehicle allotment.  LaPosta argues that whether or not GM's actions in failing to supply an adequate number of vehicles in accordance with the Dealer Protection Act are reasonable or fair is a question for a trier of fact.

This Court finds that whether or not GM's actions are reasonable under West Virginia Code § 17A-6A-10(2)(a) is a question of fact.  Viewed in the light most favorable to LaPosta, this Court finds that the allegations under West Virginia Code § 17A-6A-10(2)(a) contained in Count I of the complaint constitute

a statement of a claim.  Accordingly, GM's motion to dismiss that claim under Count I is denied.

B.    <u>Breach of Contract (Count II)</u>

In Count II, LaPosta contends that GM's decision to discontinue the Oldsmobile line breached the terms and conditions of the written Sales and Service Agreement, including Article 4.1 of the Agreement. (Compl. ¶ 37.)   Article 4.1 of the Dealer Agreement, in part, states:

> 4.1 Dealer Network Planning.   Because General Motors distributes its products through a network of authorized dealers operating from approved locations, those dealers must be appropriate in number, located properly, and have proper facilities to represent and service General Motors products competitively and to permit each dealer the opportunity to achieve a reasonable return on investment if it fulfills its obligations under its Dealer Agreement.  Through such a dealer network, General Motors can maximize the convenience of customers in purchasing products and having them serviced.   As a result, customers, dealers, and General Motors all benefit.

LaPosta further argues that "the Sales and Service Agreement is considered perpetual in nature under West Virginia law." (Compl. ¶ 37(4).)

GM argues that it has complied with the conditions set forth in § 17A-6A-4 that a manufacturer must meet when it terminates or fails to renew a dealer agreement.

LaPosta argues that the complaint is based upon the violation of the four primary contract covenants by GM.  The first related to LaPosta's right to have its franchise agreement renewed by GM.  The second relates to GM's violation of Article 14, which enumerates the

conditions under which GM may validly terminate the franchise agreement. (See Compl. Ex. B.) The third relates to LaPosta's right to earn a reasonable return on the LaPosta's investment. The fourth relates to LaPosta's right to be provided a supply of motor vehicles by series in a reasonable quantity by GM.

1. The Renewal Provision

In West Virginia, a right of action upon a contract accrues when the agreement is to be performed or when payment becomes due. Gateway Communications, Inc. v John R. Hess, Inc., 542 S.E.2d 595, 599 (W. Va. 2000)(quoting 51 Am.Jur.2d Limitation of Actions § 160 (2000)).

LaPosta contends that GM breached its obligation under the Dealer Agreement which "assures [LaPosta] an opportunity to enter a new agreement at the expiration date if General Motors determines that [LaPosta] has fulfilled its obligations under this Agreement(s)." (Pl.'s Resp. at 11.) The "Term of Agreements" section of GM's Dealer Agreement reads:

> This Agreement(s) shall expire on October 31, 2005 or ninety days after the death or incapacity of a Dealer Operator, whichever occurs first, unless earlier terminated. The Dealer is assured of an opportunity to enter into a new Agreement(s) at the expiration date if General Motors determines that Dealer has fulfilled its obligations under this Agreement(s).

LaPosta argues that it has fulfilled its obligations under the Dealer Agreement and GM has refused to meet its obligation to

provide LaPosta with the opportunity to enter into a new Dealer
Agreement.

2.   Anticipatory Breach

"Anticipatory breach of a contract is one committed before the
time has come when there is a present duty of performance, and the
outcome of words or acts evincing an intention to refuse performance
in the future." Annon v. Lucas, 185 S.E.2d 343, 350 (W. Va. 1971).
The West Virginia Supreme Court has held that "[i]f the injured
party does not wish to bring such an immediate suit for damages, he
may elect between two other alternatives -- that is, (1) to treat
the contract as still binding and wait until the time arrives for
its performance by the promisor, and at such time to bring an action
on the contract, or (2) to rescind the contract and sue for money
paid or the value of services or property furnished." Id. The
issue of anticipatory breach may be raised where a party repudiates
a contract before the time of performance.  A repudiation is defined
as:

> (a)  a statement by the obligor to the obligee indicating
> that the obligor will commit a breach that would of
> itself give the obligee a claim for damages for total
> breach, or
>
> (b)  a voluntary affirmative act which renders the
> obligor unable or apparently unable to perform without
> such a breach.[1]

---

[1]"In order to constitute a repudiation, a party's act must be
both voluntary and affirmative, and must make it actually or
apparently impossible for him to perform."  Restatement (Second)
Contracts § 250 cmt c.

Restatement (Second) of Contracts § 250.

LaPosta asserts that, under West Virginia law, it may now sue for "GM's unequivocal acknowledgment that it will not honor its renewal obligations or wait for the time for performance." (Pl.'s Resp. at 11.) Annon, 185 S.E.2d 350. LaPosta also asserts that GM has breached "a single renewal provision in an almost fully executed contact." (Pl.'s Resp. at 12.) In addition, LaPosta claims that it should not be barred from seeking relief in the form of damages for GM's breach of contract when LaPosta has fulfilled its contractual obligations to the benefit of both parties.

The Dealer Agreement expired on October 31, 2005. GM has failed to renew the Dealer Agreement in accordance with the renewal provision. In addition, any renewal is conditioned on a determination by GM that LaPosta fulfilled its obligations under the Agreement is a question of fact. This Court finds that LaPosta has stated a claim of anticipatory breach that survives GM's motion to dismiss that claim.

3. <u>Dealer Agreement</u>

LaPosta asserts that "unless there is good cause for the termination or non-renewal, the dealer agreement between GM and LapOsta is perpetual." (Pl.'s Resp. at 13.)

Whether or not LaPosta has not materially breached the dealer agreement is a factual determination. Viewed in the light most favorable to LaPosta, this Court finds that LaPosta's claim that it

15

has not materially breached the dealer agreement and retains the right to have its Dealer Agreement renewed in perpetuity constitutes a statement of a claim and the motion to dismiss on that subject is denied. While LaPosta's allegations of breach of contract survive GM's motion to dismiss, this Court notes that it is difficult to view the Dealer Agreement as being perpetual in nature.

    4. <u>Termination Provision</u>

LaPosta argues that GM has breached the franchise agreement by seeking to terminate LaPosta's Oldsmobile franchise for reasons other than those permitted in Article 14 of the franchise agreement. (<u>See</u> Pl.'s Resp. at 14.)

Whether or not an affirmative obligation is imposed on GM by the terms of the Dealer Agreement is a question of fact. Viewed in the light most favorable to LaPosta, this Court finds that those allegations contained in Count II of the complaint constitute statement of a claim. Accordingly, GM's motion to dismiss that part of Count II is denied.

C. <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>
<u>(Count III)</u>

In Count III, LaPosta alleges a breach of the implied covenant of good faith and fair dealing. (Compl. ¶ 41.) "Every contract or duty within this chapter [U.C.C.] imposes an obligation of good faith in its performance or enforcement." W. Va. Code § 46-1-203. "'Good faith' in the case of a merchant means honesty in fact and

16

the observance of reasonable commercial standards of fair dealing in the trade." W. Va. Code § 46-2-103. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts § 205 (1981).

In West Virginia, "the test of 'good faith' in a commercial setting is '. . . honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.'" Barn-Chestnut, Inc. v. CM Development Corp., 457 S.E.2d 502, 508 (W. Va. 1995)(quoting Ashland Oil, Inc. v. Donahue, 223 S.E.2d 433, 474 (W. Va. 1976)). Further, "the obligation of good faith extends only to the 'performance or enforcement' of the business transaction." Id. at 508.

LaPosta contends that the implied covenant of good faith and fair dealing extends to commercial transactions related to the contract. In addition, LaPosta argues that it is accepted in states such as Michigan to recognize an action for breach of the implied covenant of good faith and fair dealing. See Verderse V. Q. Lube, Inc., 1998 WL 1991608, *4 (Mich. App. 1998). GM asserts that while the implied covenant defines obligations that are not set out explicitly in the contract, it may not be used to add additional terms into the contract. Specifically, GM argues that LaPosta is attempting to add these new obligations where none are found in the

dealer agreement by alleging that GM violated the good faith and fair dealing:

>    1.    'by failing to provide Plaintiff with a reasonable variety and quantity or mixes of vehicles sufficient to permit Plaintiff to satisfy its obligations under its Area of Primary Responsibility'
>
>    2.    'by implementing a system of allocation of motor vehicles to Plaintiff which is unfair, inequitable, discriminatory and designed by operation to terminate Plaintiff's Oldsmobile franchise'
>
>    3.    'by engineering the reconfiguration of its dealer network in such manner as to eliminate all Oldsmobile dealers and products and preventing Plaintiff from any possibility of realizing a reasonable return on its investment'
>
>    4.    by 'exercising its discretion in a way which failed to ensure the distribution of new motor vehicles occurred in a fair and equitable manner'
>
>    5.    'by failing to apply the TFAP Program in a fair and uniform manner'

(Def.'s Mot. to Dismiss at 12-3.)

Further, GM argues that the other theories asserted by LaPosta for breach of the implied covenant are the same actions alleged in LaPosta's claim for breach of the express contract. GM argues that the implied obligation of good faith cannot override "express contract terms." (Def.'s Mot. at 14.)

GM's view is consistent with West Virginia law. In <u>Barn-Chestnut</u>, the court noted "the implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." <u>Id.</u> at 509 (quoting <u>Bonanza Int'l, Inc. v. Rest. Mgmt. Consultants, Inc.</u>, 625

F. Supp. 1431, 1448 (E.D. La. 1986)).  Further, Michigan law does not recognize a claim for breach of an implied covenant of good faith and fair dealing.  <u>Belle Isle Grill Corp. v. City of Detroit</u>, 666 N.W.2d 271 (2003).

This Court finds that both LaPosta and GM are bound by the express terms of the Dealer Agreement.  As a result, both parties must comply with the terms of the Dealer Agreement and the implied covenant of good faith and fair dealing "does not give contracting parties rights which are contrary to those set out in the contract." <u>Barn-Chestnut, Inc.</u>, 457 S.E.2d at 509.  In addition, LaPosta does not state a claim pursuant to Michigan law because  Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing.  <u>See</u> <u>Belle Isle Grill Corp.</u>, 666 N.W.2d at 271.  For the reasons stated above, this Court finds that GM's motion to dismiss the claim for breach of an implied covenant of good faith and fair dealing in Court III must be granted.

D.   <u>Unjust Enrichment (Count IV)</u>

In Count IV, LaPosta claims that "GM has been unjustly enriched at the expense of the Plaintiff, and the Plaintiff has suffered significant damages." (Compl. ¶ 51.)  Generally, a person who is unjustly enriched at the expense of another is required to make restitution.  Restatement (First) of Restitution § 1 (1988).  In West Virginia, "restitution damages from a claim of unjust enrichment are measured in terms of the benefit the plaintiff

conferred to the defendant." Bright v. QSP, Inc., 20 F.3d 1300, 1311 (4th Cir. 1994)(quoting Dunlap v. Hinkle, 317 S.E.2d 508, 512 (W. Va. 1984)). In addition, "a person may be unjustly enriched not only where he receives money or property but also where he otherwise receives a benefit. He receives a benefit . . . where he has saved expense or loss." Id. (quoting Prudential Ins. Co. v. Couch, 376 S.E.2d 104, 109 (W. Va. 1988)).

GM argues that LaPosta's claim for unjust enrichment fails because it is incompatible with LaPosta's acknowledgment that an express contract governs the subject matter of the dispute. GM points to Case v. Shepherd, 84 S.E.2d 140, 144 (1954), which held that "it is a well-rooted principle of contract law that '[a]n express contract and an implied contract, relating to the same subject matter, can not co-exist.'" (Def.'s Mot. to Dismiss at 15-6.) Specifically, GM argues that the Dealer Agreement governs the continuance of the franchise through renewal, investing time and effort to improve the image of GM products, and generating goodwill.

LaPosta claims that it has spent substantial time and resources over the last thirty-two years and has expended valuable time and money promoting and developing the Oldsmobile brand. It contends that the elimination of the Oldsmobile line allows GM to appropriate goodwill created by LaPosta without just compensation.

This Court finds that the express terms of the Dealer Agreement do not cover the identical subject matter alleged in LaPosta's

complaint. Therefore, LaPosta may assert a claim for unjust enrichment and seek recovery on that claim in quasi contract or implied contract. In addition, the question of whether GM received a benefit is a question of fact. Accordingly, this Court finds that GM's motion to dismiss Count IV must be denied.

## V. <u>Conclusion</u>

For the reasons stated herein, the defendant GM's motion to dismiss is hereby GRANTED as to Count III and DENIED as to Counts I, II and IV.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    March 31, 2006


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE